### THE LIME ROCK.[1]

### DONELLY et al. v. THE LIME ROCK.

(District Court, S. D. New York. March 30, 1893.)

COLLISION WITH BULKHEAD — MOVING VESSEL FROM BERTH — NECESSITY FOR CAUTION.

The steamboat E. was moored alongside a bulkhead in Gowanus creek, and outside of and moored to her was libelants' canal boat A. The steam lighter L. R., desirous of reaching her berth, which the E. was occupying, put her bow against the stern of the E., and pushed her forward; libelants' canal boat accompanying her. The forward motion, however, parted the canal boat's stern line to the E., and when the latter was checked the canal boat ran ahead, and into the bulkhead, receiving injuries from which she sank. The claimants denied that the canal boat struck the dock at all, and averred that the accident must have been caused by a floating log. *Held*, that the weight of evidence sustained the libelants' contention, and that, while the L. R. had the right to move the canal boat in order to reach her berth, she was bound to do so in a way to avoid accident, and was liable for her failure to use reasonable precautions.

In Admiralty. Libel for damage to canal boat by pushing her against a bulkhead. Decree for libelants.

Hyland & Zabriskie, for libelants.
Benedict & Benedict, for claimants.

[1]Reported by E. G. Benedict, Esq., of the New York bar.

BROWN, District Judge. On the afternoon of May 10, 1892, the steam lighter Lime Rock, desirous of obtaining a berth occupied by the Enterprise and the libelants' canal boat Alpha, moored outside of her along the bulkhead in Gowanus creek, shoved those two boats up the creek by pushing against the stern of the Enterprise. As a consequence of moving them in that way, the Alpha's stern line to the Enterprise was parted, and the Alpha, after first dropping back alongside the Enterprise more or less, ran ahead again when the latter was checked, until, as the libelants allege, she struck the bulkhead and knocked a hole in her bow, from which she sank in a few minutes. The above libel was filed to recover the damages.

The claimants contend that the Lime Rock did not touch the Alpha, and that the Alpha did not hit the bulkhead; and they suggest that the hole knocked in her bow some two or three feet above her bottom, may have been caused by running against some sunken water-logged timber, such as, it is said, has been occasionally found in that region. The Alpha was loaded and deep in the water, and her rail was about six feet below the deck of the Enterprise. Two witnesses testify that the canal boat did hit the dock. A very intelligent lad who was standing on the stringpiece of the bulkhead, watching the maneuver, and was within about 50 feet of the canal boat, says that the blow shook all the bulkhead, and the two others say they felt the shock. Several witnesses for the claimants testify positively that the canal boat did not come in contact with the dock. But the master of the Lime Rock had his attention otherwise occupied, and others of them plainly were not in a position to see whether she did strike or not; it is doubtful whether the rest were giving any special attention to that point. I am inclined to believe the libelants' witnesses rather than those who did not see the contact. The bow was broken in and no other probable explanation is given. The mere possibility of a sunken log without any evidence of its presence, is not enough to overcome this strong corroboration of the libelants' witnesses. I cannot give much weight to the argument that such a contact was impossible, from the position and the lines of the Alpha, because I do not think there is any certainty whatsoever with regard to the data on which the argument is founded. The bow line may have parted or rendered, and the distance the stern swung off is uncertain. The chief opposing circumstance is the statement that the bow line did not part, though that is not at all certain; evidently not much attention was paid to it. But even if it did not part, it may easily have rendered sufficiently to admit the contact with the bulkhead, and such rendering is a common occurrence.

As regards one circumstance, moreover, to which several of the claimants' witnesses testify very positively, it seems to me most probable that they are mistaken; viz.: in their statement that the Lime Rock's stem pushed inside of the rudder post of the Enterprise, i. e. between that and the bulkhead. Considering that the Lime Rock was five feet wider than the Enterprise, and that the latter lay right alongside the dock, even if the stem and the rudder post were only six inches across, the Lime Rock could not have put

her stem on the port side of the rudder post, that is, on the side towards the bulkhead, without thrusting her stem at least three feet out of the line of the bulkhead; and her pushing in such a position would be improbable, since it would be pushing the quarter of the Enterprise against the dock. I have no doubt that the witnesses have reversed the position of the tiller and the blade of the rudder about which they testify; that at first it was the tiller which was towards the bulkhead, and that the Enterprise began to push on the blade at least three feet to starboard of the rudder post; that she then backed until the tiller was put to starboard and the blade turned towards the dock out of the way of the tug's stem, and that the Lime Rock then put her stem in its natural position for pushing the Enterprise, namely, at least three feet to starboard of the rudder post, and very likely somewhat more than that. In that position in shoving up the Enterprise, the Alpha would necessarily drop astern, as one of the claimants' witnesses says she did. No confidence is to be placed in the estimates of the number of feet of the various changes. If the stern lead of the Alpha's line was at first considerable, she would certainly have dropped back sufficient to encounter the port bow of the Lime Rock, and in that way her stern would be swung off by direct contact with the Lime Rock; and despite the testimony of the defendants' witnesses to the contrary, I have little doubt that is what happened. It is immaterial, however, whether that be so or not; for all the witnesses agree that while moving up, the Alpha's stern did swing off considerably, and when the forward motion of the Enterprise was checked, and no attention paid to the deeply-loaded Alpha, she would necessarily move forward again, as the evidence shows she did, until her way was checked. There is no evidence that her stern did not swing out enough to enable her bow to reach the dock.

The claimants, doubtless, had a right to move the Alpha away to get at their own berth; but in doing so they were bound to use reasonable precautions against accident. There were three modes of procedure, either of which would have been proper and sufficient; viz.: to go alongside of the Alpha; or, if pushing was resorted to, then either to have the Alpha made fast by lines running both ways to the Enterprise, or if not that, then by having a man to tend the lines of the Alpha and render them properly, as was done on the Enterprise, to prevent sudden breaking. Reasonable care required one of these things to be done. I do not perceive any fault on the part of the libelants' boat. I must, therefore, allow a decree for the libelants, with costs.